# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| BRIANNA CASTELLI, Individually and as Class Representative | |
| Plaintiff, | Case No. 25-cv-13208 |
| v. | **JURY DEMAND** |
| JSN NETWORK, INC., MCHENRY DONUTS, INC., JOHNSBURG COFFEE LLC, ALGONQUIN COFFEE, INC., ANTIOCH ORCHARD ST. COFFEE, INC., UNKNOWN CORPORATE NAME 1 [469 W. LIBERTY STREET, WAUCONDA, IL 60084], J & SP FOOD, INC., MCHENRY RT. 31 COFFEE, INC., JAYANTILAL PATEL, SURESH PATEL, NILESH PATEL, ALKA PATEL, CURT PEDRO, NAIMESH UPADHYAYA, and SHONA BONNEY. | |
| Defendants. | |

---

## COMPLAINT

---

NOW COMES the Plaintiff, BRIANNA CASTELLI, by and through her attorney, Kent D. Sinson of the Sinson Law Group, and in complaining of the Defendants, JSN NETWORK, INC., MCHENRY DONUTS, INC., JOHNSBURG COFFEE LLC, ALGONQUIN COFFEE, INC., ANTIOCH ORCHARD ST. COFFEE, INC., UNKNOWN CORPORATE NAME 1 [469 W. LIBERTY STREET, WAUCONDA, IL 60084], J & SP FOOD, INC., MCHENRY RT. 31 COFFEE, INC., JAYANTILAL PATEL, SURESH PATEL, NILESH PATEL, ALKA PATEL, CURT PEDRO, NAIMESH UPADHYAYA, and SHONA BONNEY, alleges as follows:

**Jurisdiction and Venue**

1.      Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331, this being a civil action arising under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. This Court also has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b).

2.      The Northern District of Illinois is the proper venue for this action pursuant to 28 U.S.C. § 1391(b), as all or some of the parties reside in this District and the events giving rise to the claims occurred in this District.

**Parties**

3.      Plaintiff and Individual Class Representative Brianna Castelli ("Plaintiff") is a resident of Illinois and a citizen of the United States.

4.      Defendant JSN Network, Inc. ("JSN Network") is an Illinois corporation whose registered agent is Alka Patel located at 1180 Heather Drive, Lake Zurich, Illinois 60047. Upon information and belief, JSN Network is owned by Alka Patel, and Jayantilal Patel is a director. In 2023 and 2025, Jayantilal also signed the State of Illinois Corporation Annual Report as the President.

5.      Defendant McHenry Donuts, Inc. is an Illinois corporation whose registered agent is Suresh Patel located at 485 S. Rand Road, Lake Zurich, Illinois 60047. McHenry Donuts, Inc.'s principal place of business is 4502 Elm Street, McHenry, Illinois 60050. Upon information and belief, Suresh Patel and Nilesh Patel are co-owners and Jayantilal Patel is a director.

6.      Defendant Johnsburg Coffee LLC is an Illinois corporation whose registered agent is Jayantilal Patel located at 1180 Heather Drive, Lake Zurich, IL 60047. Johnsburg Coffee LLC's principal place of business is 2911 N. Richmond Road, Johnsburg, IL 60051. Jayantilal Patel is the manager of the LLC.

2

7.      Defendant Algonquin Coffee, Inc. is an Illinois corporation whose registered agent is Jayantilal Patel located at 1180 Heather Drive, Lake Zurich, IL 60047. Algonquin Coffee, Inc.'s principal place of business is 4005 W. Algonquin Road, Algonquin, IL 60102. Jayantilal Patel is the President of the corporation.

8.      Defendant Antioch Orchard St. Coffee, Inc. is an Illinois corporation whose registered agent is Jayantilal Patel located at 1180 Heather Drive, Lake Zurich, IL 60047. Antioch Orchard St. Coffee, Inc.'s principal place of business is 442 Orchard Street, Antioch, IL 60002. Jayantilal Patel is the President of the corporation.

9.      Defendant Unknown 1 is an Illinois corporation located at 469 W. Liberty Street, Wauconda, IL 60084, operating as a Dunkin'. The corporate name, registered agent, and registered agent's address is unknown.

10.      Defendant J & SP Food, Inc. is an Illinois corporation whose registered agent is Jayantilal Patel located at 1180 Heather Drive, Lake Zurich, IL 60047. J & SP Food, Inc.'s principal place of business is 510 Auburn Drive, Island Lake, IL 60042. Jayantilal Patel is the President of the corporation.

11.      Defendant McHenry Rt. 31 Coffee, Inc. is an Illinois corporation whose registered agent is Jayantilal Patel located at 1180 Heather Drive, Lake Zurich, IL 60047. McHenry Rt. 31 Coffee, Inc.'s principal place of business is 617 Front Street, McHenry, IL 60050. Jayantilal Patel is the President of the corporation.

12.      Defendant Jayantilal Patel, an individual, lives in the Northern District of Illinois. Jayantilal Patel is employed by Defendant JSN Network and listed as a director of Defendant JSN Network and Defendant McHenry Donuts.

13.     Defendant Suresh Patel, an individual, lives in the Northern District of Illinois. Suresh Patel is an owner of Defendant McHenry Donuts. Upon information and belief, Suresh Patel is also employed by JSN Network.

14.     Upon information and belief, Defendant Nilesh Patel, an individual, lives in the Northern District of Illinois. Nilesh Patel is an owner of Defendant McHenry Donuts. Upon information and belief, Nilesh Patel is also employed by JSN Network.

15.     Upon information and belief, Defendant Alka Patel, an individual, lives in the Northern District of Illinois and is the owner of JSN Network.

16.     Upon information and belief, Defendant Curt Pedro, an individual, lives in the Northern District of Illinois. Curt Pedro is employed by JSN Network.

17.     Defendant Naimesh Upadhyaya, an individual, lives in the Northern District of Illinois. Naimesh Upadhyaya was employed by JSN Network from June 2017 to February 2024.

18.     Defendant Shona Bonney, an individual, was employed by JSN Network from September 2021 to October 2024.

**Background Facts**

19.     Defendant JSN Network controls and manages multiple corporations throughout Illinois.

20.     Upon information and belief, Defendant JSN Network controls and manages 50+ Dunkin' and Baskin Robbins locations in the JSN Network ("Network") including but not limited to: Defendants listed in ¶¶ 4-11, Suresh, Inc., J&J Donuts, Inc., Libertyville Park Ave Coffee, Inc., JLL, Inc., Libertyville Rt. 21 Coffee, Inc., Green Oaks Coffee LLC, Grand Ave Coffee, Inc., North Wadsworth Coffee, Inc., Lyla Inc., Lewis Ave Coffee, Inc., Green Bay Coffee, Inc., East Zion Coffee, Inc., Jay Shiv Hankar Inc., Round Lake Coffee LLC, Shiv

4

Shambhu, Inc., North Chicago Coffee, Inc., Belvidere Coffee, Inc., Lake Bluff Coffee, Inc., Jay

Maa, Inc., Mundelein Lake St. Coffee, Inc., Shree Ganesh Donuts, Inc., South Wadsworth

Coffee, Inc., Fountain Square Coffee, Inc., Washington St. Coffee, Inc., Lincolnshire Coffee,

Inc., West Zion Coffee, Inc., Antioch Walmart Coffee, Inc., J & SP Food, Inc., Jay Shiv Shankar,

Inc., Great Lakes Coffee, Inc., Gurnee Coffee, Inc., Mundelein Rt. 45 Coffee, Inc., Vernon Hills

Coffee, Inc., Rockland Coffee, Inc., Mundelein Rt. 83 Coffee, Inc., Jay Shiv Krupa, Inc.,

Palatine Coffee, Inc., Manisha, Inc., Hainesville Coffee, Inc., Huntley Coffee, Inc., Lake Forest

Coffee, Inc., Richmond Donuts LLC.

21.    Each of the businesses referenced in ¶ 20 of this Complaint have separate

Employer Identification Numbers ("EINs").

22.    Each of the businesses referenced in ¶ 20 of this Complaint were given separate

EINs for the express purpose of attempting to avoid the reach of Illinois and the United States

employment laws.

23.    Many of the businesses referenced in ¶ 20 share the same owners, directors,

registered agent, registered agent address, and/or employees.

24.    Upon information and belief, JSN stands for Jayantilal, Suresh, and Nilesh Patel.

25.    Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro

are all owners, officers, or employed as management by JSN Network.

26.    Defendant Alka Patel, owner of JSN Network, oversees the end-to-end operations

of 50+ Dunkin' and Baskin Robbins locations. This includes:

    a.    strategic recruitment of management and crew members,

    b.    development and execution of comprehensive training programs,

    c.    ongoing performance management,

    d.   ensuring strict adherence to operational budgets and financial targets through effective cost control, revenue optimization, and profitability analysis,

    e.   driving crew development and retention by providing mentorship, creating advancement opportunities, and promoting a positive work environment, and

    f.   serving as a central leader for coordinating resources, streamlining operations, and aligning all business activities with corporate objectives to deliver sustainable growth and maximize profitability across all locations.

27.    Defendant Alka Patel, owner of JSN Network, lists herself on her LinkedIn profile as a "Franchisee- JSN Network" of Dunkin' since August 1996.

28.    Defendants Naimesh Upadhyaya and Shona Bonney were employed by JSN Network until February 2024 and October 2024, respectively.

29.    Defendant JSN Network collects a management fee and funds expenses for each location in its network of stores.

30.    Defendant JSN Network manages the financial aspects of each entity in its network, including Defendant McHenry Donuts and the businesses referenced in ¶ 20.

31.    Upon information and belief, Defendant JSN Network manages employees that work in its Network, including businesses and defendants identified in ¶ 20.

32.    Plaintiff worked for Defendants JSN Network at the McHenry Donuts location starting on September 19, 2022.

33.    Upon information and belief, during the time she was employed by Defendants JSN Network, she was also employed by Defendants McHenry Donuts, Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Unknown Corporate Name 1 [469 W.

Liberty Street, Wauconda, Il 60084], J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc. who operated as Plaintiff's employer while she was working in their Dunkin' store.

34.     On August 18, 2022, Defendant JSN Network sent an offer letter to Plaintiff with the following JSN Network logo on the top of the page:



35.     Plaintiff electronically signed the offer letter on August 18, 2022, and returned it to Defendant JSN Network

36.     Plaintiff was offered a position with Defendant JSN Network.

37.     Upon information and belief, other similarly situated employees were offered positions with Defendant JSN Network and worked at one the stores in the Network.

38.     Plaintiff was required to attend training to learn Defendant JSN Network's systems.

39.     Plaintiff's offer letter stated that she would be a member of JSN Network's dynamic and fast-growing team.

40.     Plaintiff's offer letter stated that she would be supervised by JSN Network's District Manager, Defendant Naimesh Upadhyaya.

41.     Plaintiff's offer letter stated that Mr. Upadhyaya would work with her to complete her Dunkin Manager Training in McHenry IL.

42.     Plaintiff's offer letter detailed her compensation to be $60,000 per year including a 6-day work week with 55 hours per week.

43.     Plaintiff's was offered a position as a salaried employee.

44.     Plaintiff's offer letter detailed a bonus to Restaurant Managers up to $15,000 per year.

45.     Plaintiff's offer letter stated that she would be eligible for a bonus in Q4 2022 in her role as Restaurant Manager pending that she is 100% certified with Online U Manager training.

46.     Plaintiff's offer letter stated that her start date would be September 19, 2022.

47.     Plaintiff's offer letter stated, "We look forward to your joining us at JSN Network."

48.     Plaintiff's offer letter was signed "Sincerely, JSN Network."

49.     On September 19, 2022, Plaintiff signed an employment contract with this heading:



50.     In the contract, the Plaintiff's employer was identified as McHenry Donuts, Inc. or to be determined based on any chosen location of JSN Network, Inc's locations.

51.     Plaintiff's employment contract referred to McHenry Donuts, Inc. as a location of Dunkin Donuts & Baskin Robbins.

52.     Plaintiff's employment contract stated that McHenry Donuts, Inc. is engaged in the business of d/b/a Dunkin Donuts & Baskin Robbins selling coffee and bakery goods.

53.     Plaintiff's employment contract stated that McHenry Donuts, Inc. is also engaged in developing and operating Dunkin Donuts & Baskin Robbins locations in northwest Chicagoland area.

54.     Plaintiff's employment contract required her to work a minimum of 50 hours per week and 6 days per week including weekends and until the daily/weekly tasks are completed on a regular basis.

55.     Plaintiff's employment contract stated that McHenry Donuts, Inc. employed her as a Store Manager.

56.     Plaintiff's employment contract stated that she agreed to be subject to the general supervision, advice and direction of McHenry Donuts, Inc. and McHenry Donuts, Inc.'s supervisory personnel of upper management.

57.     Plaintiff's employment contract stated that her compensation would be an annual salary of $60,000 equal to a bi-weekly salary of $2,307.69.

58.     Plaintiff's employment contract's final page included a top line of "McHenry Donuts Inc. (or TBD any chosen location of JSN Network Inc locations)."

59.     Plaintiff worked as a restaurant manager at McHenry Donuts, Inc. at 4502 Elm Street, McHenry, Illinois 60050.

60.     The location of Plaintiff's management responsibilities could be changed by Defendants listed at ¶¶ 4-18 at any time.

61.     Defendants listed at ¶¶ 4-18 required Plaintiff and other store employees to work at multiple locations in the Network.

62.     On multiple occasions, Defendants Naimesh Upadhyaya and Shona Bonney instructed Plaintiff to work at the locations including Defendants Johnsburg Coffee, Algonquin Coffee, Antioch Orchard Coffee, Inc., Unknown Corporate Name 1 [469 Liberty Street, Wauconda], McHenry Rt. 31 Coffee, Inc., and J & SP Food, Inc.

63.     When Plaintiff worked at other locations, Plaintiff was required to clock in and clock out at the McHenry Donuts location.

64.     When Plaintiff worked at other locations, she was paid by Defendant McHenry Donuts.

65.     Upon information and belief, while working at the stores of Defendants Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, Il 60084], J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc., these Defendants operated as Plaintiff's employer, because they had the authority to hire or fire Plaintiff to work at their location, set the conditions of her employment while Plaintiff worked at their store, supervised Plaintiff while she worked at their store, and controlled her employment records for her time working at their store.

66.     While working at the stores, of Defendants Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, Il 60084], J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc., Defendants Naimesh Upadhyaya and Shona Bonney were her direct managers.

67.     During her employment with Defendants listed in ¶¶ 4-11, Plaintiff attended quarterly meetings at 1180 Heather Drive.

68.     The quarterly meetings were attended by the district managers and owners of various stores in the JSN Network, including Defendants listed in ¶¶ 4-11.

69.     In each quarterly meeting, between 4-8 stores attended. The 4-8 stores often had the same JSN Network district manager.

70.     In the quarterly meetings, multiple topics were discussed including brand expectations, new products, performance of each store, bonuses, etc.

71.     During the quarterly meetings, individual bonuses were discussed with Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, Curt Pedro, Naimesh Upadhyaya and Shona Bonney.

72.     Upon information and belief, Defendants listed in ¶¶ 4-18 determined that employees were to be paid from their home store regardless of the location where he/she worked.

73.     The home store would then list this pay as "labor" cost.

74.     A home store's "labor" cost was one variable in determining whether the store manager received a bonus.

75.     Plaintiff was routinely denied bonuses based on her home store's "labor" costs, costs of food products, and "Paid Outs."

76.     On or about December 2023, Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, Curt Pedro, Naimesh Upadhyaya Plaintiff denied Plaintiff her full, earned bonus for Q3 in 2023.

77.     Upon information and belief, during other quarters in 2022, 2023 and 2024, Plaintiff and other similarly situated restaurant managers were denied earned bonuses due to "labor" costs, costs of food products, and "Paid Outs."

78.     Defendant Naimesh Upadhyaya instructed Plaintiff to include "labor" costs, costs of products for the home store, and employee travel costs as part of the store's "Paid Outs."

79.     Upon information and belief, Defendant Naimesh Upadhyaya was directed by Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro on what to include in food and labor and "Paid Outs."

80.     Plaintiff is covered under the protections of the FLSA because she is employed in an enterprise engaged in commerce or in the production of goods for commerce.

81.     JSN Network and the other Defendants have divided up their companies into individual companies to avoid liability under the FLSA and other federal laws.

82.     The corporate Defendants, ¶¶ 4-11, are separate establishments that constitute one enterprise and/or joint employers.

83.     Plaintiff was employed by JSN Network, Inc. and McHenry Donuts, Inc. from her initial employment through her firing.

84.     In addition, upon information and belief, Plaintiff was also employed by Defendants Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Unknown Corporate Name 1 [469 W. Liberty Street, Wauconda, Il 60084], J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc. while working for their stores during her employment with Defendants JSN Network, Inc. and McHenry Donuts, Inc.

85.     Defendants listed in ¶¶ 4-11 and businesses in the Network (¶ 20) are for-profit companies.

86.     Defendants listed in ¶¶ 4-11 and businesses in the Network (¶ 20) are two or more businesses that involve (1) related activities performed through (2) unified operation and/or (3) common control for a (4) common business purpose.

87.     Defendants listed in ¶¶ 4-11 and businesses in the Network (¶ 20) perform related activities, namely operating retail stores selling Dunkin' including but not limited to warehousing, bookkeeping, auditing, purchasing, advertising, and the retailing of Dunkin' products.

88.     Defendants, including the corporations and individuals listed in ¶¶ 4-18, maintain and exercise common control over the employees, including but not limited to hiring and firing

12

of employees, setting the terms of employment, and dictating the day-to-day operations of the locations.

89.     The corporate Defendants, ¶¶ 4-11, have common human resources and other common staff managing and controlling the operations of the 50+ stores in the JSN Network, including those listed in ¶ 20.

90.     Upon information and belief, employees of Defendants listed in ¶¶ 5-11 and ¶ 20 are all subject to the same employment policies.

91.     Defendant JSN Network determines and carries out the employment policies for employees at the 50+ stores in the JSN Network, including those listed in ¶ 20.

92.     Upon information and belief, Defendants, including the corporations and individuals, ¶¶ 4-18, exercised supervisory authority over Plaintiff and other similarly situated employees.

93.     Upon information and belief, Defendants, including the corporations and individuals, ¶¶ 4-18, were responsible for the alleged FLSA violations while acting in the interests of JSN Network and the other named Defendants.

94.     Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, Curt Pedro, Naimesh Upadhyaya and Shona Bonney have the power to direct, regulate, govern, or administer the performance of employees of Defendants listed in ¶¶ 5-11 and the 50+ stores in the JSN Network, including those listed in ¶ 20.

95.     Upon information and belief, Defendants listed in ¶¶ 4-11 and businesses in the Network (¶ 20) are controlled by Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, Curt Pedro, Naimesh Upadhyaya and Shona Bonney.

96. The gross volume of sales of each of the Defendants listed in ¶¶ 4-11 and businesses in the Network (¶ 20) in the 12-month periods in 2022, 2023, and 2024 exceed $500,000.

97. Under information and belief, the gross volume of sales of Defendants listed in ¶¶ 4-11 and businesses in the Network (¶ 20) in 2025 will exceed $500,000.

98. Under information and belief, the gross volume of sales of JSN Network in 2025 will exceed $500,000.

99. Upon information and belief, the 12-month gross volume of sales for McHenry Donuts in each year of 2022-2025 exceed $500,000.

100. Defendant JSN Network advertises employment opportunities on its website for Defendants listed in ¶¶ 5-11 and the 50+ stores in the JSN Network, including those listed in ¶ 20.

101. Defendant JSN Network's website invites prospective employees to apply for jobs at any location for Defendants listed in ¶¶ 5-11 and the 50+ stores in the JSN Network, including those listed in ¶ 20.

102. Defendants JSN Network, Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, Curt Pedro, Naimesh Upadhyaya and Shona Bonney required employees of Defendants (listed in ¶¶ 5-11) and the 50+ stores in the JSN Network, including those listed in ¶ 20, to work shifts at other locations in the network.

103. Defendant JSN Network and its owners and employees, including Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, Curt Pedro, Naimesh Upadhyaya and Shona Bonney, supervised and/or controlled the conditions of payment, including paychecks,

taxes, benefits, etc. of Defendants' (listed in ¶¶ 5-11) and the 50+ stores in the JSN Network, (including those listed in ¶ 20).

104.    Defendant JSN Network and its owners and employees, including Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, Curt Pedro, Naimesh Upadhyaya and Shona Bonney, supervised and/or controlled the salary and/or hourly rate of pay of employees of Defendants listed in ¶¶ 5-11 and the 50+ stores in the JSN Network, including those listed in ¶ 20.

105.    Defendant JSN Network and its owners and employees, including Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, Curt Pedro Naimesh Upadhyaya and Shona Bonney, exercised significant control over employees of JSN Network, Defendants listed in ¶¶ 5-11 and the 50+ stores in the JSN Network, including those listed in ¶ 20, including Plaintiff.

106.    Defendants listed in ¶¶ 4-11 and the 50+ stores in the JSN Network, including those listed in ¶ 20, share office space, registered agents, registered agent addresses, directors, and/or owners.

107.    Defendants listed in ¶¶ 5-11 and the 50+ stores in the JSN Network, including those listed in ¶ 20, share common employment policies, including bonuses, paid time off, health benefits, dental benefits, and other unnamed benefits.

108.    Upon information and belief, employment records for Defendants listed in ¶¶ 4-11 and the 50+ stores in the JSN Network, including those listed in ¶ 20, are kept at the same location: 1180 Heather Drive, Lake Zurich, IL 60047 or another location directed by Defendant JSN Network.

109.     Store managers could not hire or fire employees without the consent of their district managers.

110.     District managers were employed by JSN Network.

111.     Defendant Naimesh Upadhyaya worked as a district manager for JSN Network during Plaintiff's employment.

112.     Defendant Shona Bonney worked as a general manager for JSN Network during Plaintiff's employment.

113.     Defendants listed in ¶¶ 4-18 and the 50+ stores in the JSN Network, including those listed in ¶ 20, would often set the same rate of pay for a category of employees (i.e. crew member, shift leader, assistant manager, restaurant manager) that worked at the locations of other named Defendants.

114.     Defendants listed in ¶¶ 4-11 and the 50+ stores in the JSN Network, including those listed in ¶ 20, shared products between their locations.

115.     Defendants listed in ¶¶ 4-11 and the 50+ stores in the JSN Network, including those listed in ¶ 20, did not track products that were exchanged between Defendants' locations.

116.     Products for stores, including Defendants listed in ¶¶ 5-11 and the 50+ stores in the JSN Network, including those listed in ¶ 20, were often delivered to a single store.

117.     Jayantilal Patel's name appeared on invoices for products ordered by stores in the Network.

118.     Defendants JSN Network, McHenry Donuts, Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, Curt Pedro, Naimesh Upadhyaya and Shona Bonney exercised control over the working conditions of Plaintiff.

16

119.    Defendants JSN Network, McHenry Donuts, Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, Curt Pedro, Naimesh Upadhyaya and Shona Bonney acted directly or indirectly in the interest of an employer in relation to Plaintiff and other employees.

120.    Defendants Jayantilal Patel and Alka Patel, as owners and directors of JSN Network, exercised control over the terms of employment and working conditions of Plaintiff including the following: (1) the power to hire and fire; (2) supervised and controlled work schedules and employment conditions; (3) determined the rate and method of pay; and (4) maintained employment records.

121.    Defendants Suresh Patel and Nilesh Patel, as owners of McHenry Donuts, exercised control over the terms of employment and working conditions of Plaintiff including the following: (1) the power to hire and fire; (2) supervised and controlled work schedules and employment conditions; (3) determined the rate and method of pay; and (4) maintained employment records.

122.    Defendant Curt Pedro, as a Director of Operations of Defendant JSN Network, exercised control over the terms of Plaintiff's employment and the working conditions during her employment including holding power to hire and fire Plaintiff, supervising and controlling her work schedule and/or employment conditions, determining the rate and method of payment, and maintaining employment records.

123.    Defendants Naimesh Upadhyaya and Shona Bonney were Plaintiff's direct managers and exercised control over the day-to-day working conditions of Plaintiff including the power to hire and fire, supervising and controlling work schedules and employment conditions, determining the rate and method of pay, and maintaining employment records.

124.    Plaintiff has an employer/employee relationship with Defendants listed in ¶¶ 4-18.

125.    Defendants listed in ¶¶ 4-18 had the authority to hire and fire employees, to promulgate work rules and assignments and set conditions of employment, including compensation, benefits, and hours of its employees, performed day-to-day supervision, including employee discipline of its employees, controlled employee records, including payroll, insurance, and taxes of its employees, and exercised significant control over its employees, including Plaintiff.

## COUNT I
## FAIR LABOR STANDARDS ACT
### 29 U.S.C. 201 et seq.
### *Castelli v. JSN Network, et. al.*

126.    Plaintiff incorporates the allegations of Paragraphs 1 through 125 of this Complaint as if fully restated in this paragraph.

127.    Defendants listed in ¶¶ 4-18 willfully violated the FLSA.

128.    Defendants listed in ¶¶ 4-18 have divided up their companies into individual companies to avoid liability under the FLSA and other federal laws.

129.    Defendants listed in ¶¶ 4-18 and the 50+ stores in the JSN Network, including those listed in ¶ 20, constitute an enterprise and/or a joint employer under the FLSA.

130.    In her position as Store Manager, Defendants listed in ¶¶ 4-18 classified Plaintiff as an exempt employee.

131.    Plaintiff's contract stated that she would receive the predetermined amount of $60,000 equal to a bi-weekly salary of $2,307.69 payable every other week.

132.    As an exempt employee, Plaintiff must receive full salary for any week she performed any work.

18

133.     On multiple occasions in 2022, 2023, and 2024, upon information and belief, one or more of the Defendants listed in ¶¶ 4-18 made deductions from Plaintiff's predetermined salary.

134.     On numerous weeks when Plaintiff worked less than her weekly requirement, Defendants listed in ¶¶ 4-18 paid Plaintiff on an hourly basis rather than her bi-weekly salary of $2,307.69. These include, but are not limited to, the following:

    a.   From April 30, 2023, to May 13, 2023, Plaintiff was paid $1,346.15 for two weeks of work.

    b.   From May 14, 2023, to May 27, 2023, Plaintiff was paid $480.77. Plaintiff worked approximately 6 hours in the first week and 17 hours in the second week of the pay period.

    c.   From May 28, 2023, to June 10, 2023, Plaintiff was paid $961.54. Plaintiff worked approximately 27 hours in the first week and 19 hours in the second week of the pay period.

    d.   From June 11, 2023, to June 24, 2023, Plaintiff was paid $1,057.69. Plaintiff worked approximately 23 hours in the first week and 26 hours in the second week of the pay period.

    e.   From June 25, 2023, to July 8, 2023, Plaintiff was paid $1,153.85. Plaintiff worked approximately 22 hours in the first week and 33 hours in the second week of the pay period.

    f.   From July 9, 2023, to July 22, 2023, Plaintiff was paid $1,057.69. Plaintiff worked approximately 24 hours in the first week and 28 hours in the second week of the pay period.

g.  From March 17, 2024, to March 30, 2024, Plaintiff was paid $769.23 for two weeks of work. Her manager's salary for time that she worked during the first week was $192.31.

135.    Defendants listed in ¶¶ 4-18 made the decision willfully to violate the FLSA and pay Plaintiff hourly on weeks when as an exempt employee, she was entitled to her weekly salary.

136.    Defendants listed in ¶¶ 4-18 knew or acted with reckless disregard for whether its conduct of paying a salaried/exempt employee on an hourly basis violated the FLSA.

137.    Defendants listed in ¶¶ 4-18 failed to make an adequate inquiry into whether its conduct of paying salaried/exempt employees on an hourly basis complied with the FLSA.

138.    The deductions made by one or more Defendants listed in ¶¶ 4-18 from Plaintiff's predetermined salary violated the salary basis requirement of an exempt employee under the FLSA.

139.    Defendants listed in ¶¶ 4-18 had an actual practice of making improper deductions from Plaintiff and other employees' predetermined salaries.

140.    Because of Defendants' listed in ¶¶ 4-18 actual practice of making improper deductions from Plaintiff's and other employees' salaries, Defendants lose the salary basis exemption.

141.    Without the exemption, Plaintiff and other managerial employees are non-exempt employees.

142.    Because Plaintiff is a non-exempt employee, Plaintiff was entitled to 1.5 times her hourly pay rate for each hour that she worked over 40 hours in any given week.

143.     In 2022, 2023, and 2024, Plaintiff frequently worked more than 40 hours per week. These include, but are not limited to, the following;

   a.  For the week of October 30, 2022, to November 4, 2022, Plaintiff worked approximately 46 hours.

   b.  For the week of November 5, 2022 to November 12, 2022, Plaintiff worked approximately 59 hours.

   c.  For the week of March 19, 2023, to March 26, 2023, Plaintiff worked approximately 62 hours.

   d.  For the week of March 27, 2023, to April 1, 2023, Plaintiff worked approximately 49 hours.

   e.  For the week of January 7, 2024, to January 13, 2024, Plaintiff worked approximately 48 hours.

   f.  For the week of January 14, 2024, to January 20, 2024, Plaintiff worked approximately 60 hours.

144.     During her employment, Plaintiff received bonuses in December 2022 ($100), February 2023 ($500), May 2023 ($500), June 2023 ($1,050), August 2023 ($1,200), and December 2023 ($100).

145.     Under the FLSA, these bonuses should have been figured into her regular rate of pay, so that when she worked overtime, the time-and-a-half premium would have been based on a regular rate that included the bonuses.

146.     Defendants listed in ¶¶ 4-18 failed to include bonuses in Plaintiff's regular rate of pay.

147. As a result, she and other nonexempt employees were systematically underpaid for their overtime hours.

148. Defendants listed in ¶¶ 4-18 knew their practices of making improper deductions from Plaintiff's and other employees' salaries violated the FLSA or were indifferent to whether they were violating the FLSA.

### **Prayer for Relief as to Count I**

i. That Plaintiff and other employees similarly situated be awarded all unpaid wages and bonuses lost as a result of Defendants' wrongful conduct in an amount exceeding $75,000.00 to be determined at trial;

ii. That Plaintiff and other employees similarly situated be awarded liquidated damages;

iii. That Plaintiff and other employees similarly situated be awarded interest on the amount awarded at trial at the prevailing rate;

iv. That Plaintiff and other employees similarly situated be awarded attorneys' fees and costs;

v. Award Plaintiff and all other employees all remedies available under the FLSA;

vi. Grant such other relief as may be just and proper.

## CLASS AND/OR COLLECTIVE ACTION ALLEGATIONS

149.     Upon information and belief, Defendants listed in ¶¶ 4-11 and the 50+ stores in the JSN Network, including those listed in ¶ 20, have over 1,000 employees.

150.     Defendants listed in ¶¶ 4-18 and the 50+ stores in the JSN Network, including those listed in ¶ 20, have divided up their companies into individual companies to avoid liability under the FLSA and other federal laws.

151.     Defendants listed in ¶¶ 4-18 and the 50+ stores in the JSN Network, including those listed in ¶ 20, constitute an enterprise and/or a joint employer under the FLSA.

152.     In 2022, 2023, and 2024, Defendants listed in ¶¶ 4-11 each had an annual dollar volume of sales over $500,000 during the 12-month period in each calendar year.

153.     From 2022 to 2025, Defendants listed in ¶¶ 4-18 have employed hundreds of exempt employees who would be reclassified as non-exempt employees.

154.     Deductions made by one or more Defendants listed in ¶¶ 4-18 from employees' predetermined salary violated the salary basis requirement of an exempt employee under the FLSA.

155.     Because of Defendants listed in ¶¶ 4-18 actual practice of making improper deductions from employees' salaries, Defendants lose the salary basis exemption.

156.     Without the exemption, numerous employees of Defendants listed in ¶¶ 4-18 are non-exempt employees.

157.     A significant number of these reclassified non-exempt employees worked overtime and earned bonuses.

158.     Defendants listed in ¶¶ 4-18 failed to include bonuses in employees' regular rate of pay.

159. As a result, nonexempt employees were systematically underpaid for their overtime hours.

160. The Defendants listed in ¶¶ 4-18 engaged in a willful, uniform practice of failing to pay overtime to non-exempt employees.

161. The Defendants listed in ¶¶ 4-18 engaged in a willful, uniform practice of failing to pay predetermined salary to exempt employees.

162. The Defendants listed in ¶¶ 4-18 engaged in a willful, uniform practice of failing to figure bonus pay into the regular rate of pay for non-exempt employees.

163. As a result, the putative class at issue is so numerous that joinder of all members is impracticable.

164. As a result, there are questions of law or fact common to the putative classes.

165. Plaintiff's claims are typical of the claims of the putative classes and/or collective.

166. Plaintiff will fairly and adequately protect the interest of the class.

167. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action and/or collective action is superior to other available methods for the fair and efficient adjudication of this controversy. Fed. Rule Civ. Pro. 23(b)(3).

168. Class action and/or collective action treatment is otherwise appropriate.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated employees, respectfully requests judgment in favor of Plaintiff and against Defendants, and award statutory and other damages, costs, attorney's fees, and all other relief that this Honorable Court deems just and proper.

Dated: October 29, 2025                    SINSON LAW GROUP

Kent D. Sinson (Attorney No. 6196953)
kent@sinsonlawgroup.com
SINSON LAW GROUP
100 N. LaSalle Street, Suite 1100
Chicago, Illinois 60602
(312) 332-2107 / Phone
(312) 332-4508 / Fax

/s/ Kent D. Sinson
Kent D. Sinson, Attorney at Law

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIANNA CASTELLI, Individually and as Class Representative | |
| Plaintiff, | Case No. 25-cv-13208 |
| v. | **JURY DEMAND** |
| JSN NETWORK, INC., MCHENRY DONUTS, INC., JOHNSBURG COFFEE LLC, ALGONQUIN COFFEE, INC., ANTIOCH ORCHARD ST. COFFEE, INC., UNKNOWN CORPORATE NAME 1 [469 W. LIBERTY STREET, WAUCONDA, IL 60084], J & SP FOOD, INC., MCHENRY RT. 31 COFFEE, INC., JAYANTILAL PATEL, SURESH PATEL, NILESH PATEL, ALKA PATEL, and CURT PEDRO, NAIMESH UPADHYAYA, and SHONA BONNEY. | |
| Defendants. | |

**JURY DEMAND**

In accordance with Rule 5(d), the undersigned demands a jury trial.

Dated: October 29, 2025          SINSON LAW GROUP


                                 /s/ Kent D. Sinson

Kent D. Sinson (Attorney No. 6196953)     Kent D. Sinson, Attorney for Plaintiff
kent@sinsonlawgroup.com
SINSON LAW GROUP
100 N. LaSalle Street, Suite 1100
Chicago, Illinois 60602
(312) 332-2107 / Phone
(312) 332-4508 / Fax