**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRIANNA CASTELLI and TAYLOR KEEFE, Individually and as Class Representatives,<br><br>Plaintiffs,<br>v.<br><br>JSN NETWORK, INC., MCHENRY DONUTS, INC., JOHNSBURG COFFEE LLC, ALGONQUIN COFFEE, INC., ANTIOCH ORCHARD ST. COFFEE, INC., NILESH, INC., J & SP FOOD, INC., MCHENRY RT. 31 COFFEE, INC., JAYANTILAL PATEL, SURESH PATEL, NILESH PATEL, ALKA PATEL, and CURT PEDRO.<br><br>Defendants. | Case No. 25-cv-13208<br><br>**JURY DEMAND**<br><br>Judge Jeffery I. Cummings,<br>District Judge. |

**SECOND AMENDED COMPLAINT**

NOW COMES the Plaintiffs, BRIANNA CASTELLI and TAYLOR KEEFE, by and through their attorney, Kent D. Sinson of the Sinson Law Group, and in complaining of the Defendants, JSN NETWORK, INC., MCHENRY DONUTS, INC., JOHNSBURG COFFEE LLC, ALGONQUIN COFFEE, INC., ANTIOCH ORCHARD ST. COFFEE, INC., NILESH, INC., J & SP FOOD, INC., MCHENRY RT. 31 COFFEE, INC., JAYANTILAL PATEL, SURESH PATEL, NILESH PATEL, ALKA PATEL, and CURT PEDRO, alleges as follows:

## Jurisdiction and Venue

1. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331, this being a civil action arising under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. This Court also has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b).

2. The Northern District of Illinois is the proper venue for this action pursuant to 28 U.S.C. § 1391(b), as all or some of the parties reside in this District and the events giving rise to the claims occurred in this District.

## Parties

3. Plaintiff and Individual Class Representative Brianna Castelli is a resident of Illinois and a citizen of the United States.

4. Plaintiff and Individual Class Representative Taylor Keefe is a resident of Illinois and a citizen of the United States.

5. Defendant JSN Network, Inc. ("JSN Network") is an Illinois corporation whose registered agent is Alka Patel located at 1180 Heather Drive, Lake Zurich, Illinois 60047. Upon information and belief, JSN Network is owned by Alka Patel, and Jayantilal Patel is a director. In 2023 and 2025, Jayantilal also signed the State of Illinois Corporation Annual Report as the President.

6. Defendant McHenry Donuts, Inc. is an Illinois corporation whose registered agent is Suresh Patel located at 485 S. Rand Road, Lake Zurich, Illinois 60047. McHenry Donuts, Inc.'s principal place of business is 4502 Elm Street, McHenry, Illinois 60050. Upon information and belief, Suresh Patel and Nilesh Patel are co-owners and Jayantilal Patel is a director.

7. Defendant Johnsburg Coffee LLC is an Illinois corporation whose registered agent is Jayantilal Patel located at 1180 Heather Drive, Lake Zurich, IL 60047. Johnsburg Coffee LLC's

principal place of business is 2911 N. Richmond Road, Johnsburg, IL 60051. Jayantilal Patel is the manager of the LLC.

8. Defendant Algonquin Coffee, Inc. is an Illinois corporation whose registered agent is Jayantilal Patel located at 1180 Heather Drive, Lake Zurich, IL 60047. Algonquin Coffee, Inc.'s principal place of business is 4005 W. Algonquin Road, Algonquin, IL 60102. Jayantilal Patel is the President of the corporation.

9. Defendant Antioch Orchard St. Coffee, Inc. is an Illinois corporation whose registered agent is Jayantilal Patel located at 1180 Heather Drive, Lake Zurich, IL 60047. Antioch Orchard St. Coffee, Inc.'s principal place of business is 442 Orchard Street, Antioch, IL 60002. Jayantilal Patel is the President of the corporation.

10. Defendant Nilesh, Inc. is an Illinois corporation located at 469 W. Liberty Street, Wauconda, IL 60084, operating as a Dunkin'. Nilesh, Inc. is owned by Suresh Patel. Suresh Patel is also listed as the registered agent, President, and Director located at 1180 Heather Dr., Lake Zurich, IL 60047.

11. Defendant J & SP Food, Inc. is an Illinois corporation whose registered agent is Jayantilal Patel located at 1180 Heather Drive, Lake Zurich, IL 60047. J & SP Food, Inc.'s principal place of business is 510 Auburn Drive, Island Lake, IL 60042. Jayantilal Patel is the President of the corporation.

12. Defendant McHenry Rt. 31 Coffee, Inc. is an Illinois corporation whose registered agent is Jayantilal Patel located at 1180 Heather Drive, Lake Zurich, IL 60047. McHenry Rt. 31 Coffee, Inc.'s principal place of business is 617 Front Street, McHenry, IL 60050. Jayantilal Patel is the President of the corporation.

13. Defendant Jayantilal Patel, an individual, lives in the Northern District of Illinois. Jayantilal Patel is employed by Defendant JSN Network and listed as a director of Defendant JSN Network and Defendant McHenry Donuts.

14. Defendant Suresh Patel, an individual, lives in the Northern District of Illinois. Suresh Patel is an owner of Defendants McHenry Donuts and Nilesh, Inc. Suresh Patel is also employed by JSN Network.

15. Upon information and belief, Defendant Nilesh Patel, an individual, lives in the Northern District of Illinois. Nilesh Patel is an owner of Defendants McHenry Donuts. Nilesh Patel is also employed by JSN Network.

16. Upon information and belief, Defendant Alka Patel, an individual, lives in the Northern District of Illinois and is the owner of JSN Network.

17. Upon information and belief, Defendant Curt Pedro, an individual, lives in the Northern District of Illinois. Curt Pedro is employed by JSN Network.

**Background Facts**

18. Defendant JSN Network controls and manages multiple corporations throughout Illinois.

19. Upon information and belief, Defendant JSN Network controls and manages 50+ Dunkin' and Baskin Robbins locations in the JSN Network ("Network") including but not limited to: Defendants listed in ¶¶ 5-12, Suresh, Inc., J&J Donuts, Inc., Libertyville Park Ave Coffee, Inc., JLL, Inc., Libertyville Rt. 21 Coffee, Inc., Green Oaks Coffee LLC, Grand Ave Coffee, Inc., North Wadsworth Coffee, Inc., Lyla Inc., Lewis Ave Coffee, Inc., Green Bay Coffee, Inc., East Zion Coffee, Inc., Jay Shiv Hankar Inc., Round Lake Coffee LLC, Shiv Shambhu, Inc., North Chicago Coffee, Inc., Belvidere Coffee, Inc., Lake Bluff Coffee, Inc., Jay Maa, Inc., Mundelein Lake St. Coffee, Inc., Shree Ganesh Donuts, Inc., South Wadsworth Coffee, Inc., Fountain Square Coffee,

Inc., Washington St. Coffee, Inc., Lincolnshire Coffee, Inc., West Zion Coffee, Inc., Antioch Walmart Coffee, Inc., J & SP Food, Inc., Jay Shiv Shankar, Inc., Great Lakes Coffee, Inc., Gurnee Coffee, Inc., Mundelein Rt. 45 Coffee, Inc., Vernon Hills Coffee, Inc., Rockland Coffee, Inc., Mundelein Rt. 83 Coffee, Inc., Jay Shiv Krupa, Inc., Palatine Coffee, Inc., Manisha, Inc., Hainesville Coffee, Inc., Huntley Coffee, Inc., Lake Forest Coffee, Inc., Richmond Donuts LLC.

20. Each of the businesses referenced in ¶ 19 of this Complaint have separate Employer Identification Numbers ("EINs").

21. Each of the businesses referenced in ¶ 19 of this Complaint were given separate EINs for the express purpose of attempting to avoid the reach of Illinois and the United States employment laws.

22. Each of the Defendants referenced in ¶¶ 5-19 operate as a Dunkin' franchise engaged in the business of selling coffee and bakery goods (that are ordered and delivered to the store) to consumers for a profit.

23. Each of the Defendants referenced in ¶¶ 5-19 sold goods including coffee, donuts, and bakery items that moved in interstate commerce.

24. Each of the Defendants referenced in ¶¶ 5-19 ordered food items and materials for each store from outside sources, and the items and materials moved in interstate commerce.

25. Employees at each Dunkin' location referenced in ¶¶ 5-19 operated equipment, including computers, which moved in interstate commerce and also handled and produced goods sold to consumers.

26. Dunkin' is owned, controlled, and operated by Inspire Brands.

27. Many of the businesses referenced in ¶ 19 share the same owners, directors, registered agent, registered agent address, and/or employees.

28. Upon information and belief, JSN stands for Jayantilal, Suresh, and Nilesh Patel.

29. Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro are all owners, officers, or employed as management by JSN Network.

30. Defendant Alka Patel, owner of JSN Network, oversees the end-to-end operations of 50+ Dunkin' and Baskin Robbins locations. This includes:

a. strategic recruitment of management and crew members,

b. development and execution of comprehensive training programs,

c. ongoing performance management,

d. ensuring strict adherence to operational budgets and financial targets through effective cost control, revenue optimization, and profitability analysis,

e. driving crew development and retention by providing mentorship, creating advancement opportunities, and promoting a positive work environment, and

f. serving as a central leader for coordinating resources, streamlining operations, and aligning all business activities with corporate objectives to deliver sustainable growth and maximize profitability across all locations.

31. Defendant Alka Patel, owner of JSN Network, lists herself on her LinkedIn profile as a "Franchisee- JSN Network" of Dunkin' since August 1996.

32. Defendant JSN Network collects a management fee and funds expenses for each location in its network of stores.

33. Defendant JSN Network manages the financial aspects of each entity in its network, including Defendant McHenry Donuts and the businesses referenced in ¶ 19.

34. Defendant JSN Network hires and manages employees, including setting the employees title and rate of pay, that work in its Network, including businesses and defendants identified in ¶ 19.

35. Plaintiff Castelli and Plaintiff Keefe each sold goods, including coffee, donuts, and bakery items, that moved in interstate commerce, to consumers.

36. Plaintiff Castelli worked for Defendants JSN Network at the McHenry Donuts location starting on September 19, 2022.

37. Plaintiff Keefe worked for Defendants JSN Network at the McHenry Donuts location starting on March 10, 2024.

38. Upon information and belief, during the time she was employed by Defendants JSN Network, Plaintiff Castelli was also employed by Defendants McHenry Donuts, Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Nilesh, Inc., J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc. who operated as Plaintiff Castelli's employer while she was working in their Dunkin' store.

39. Upon information and belief, during the time she was employed by Defendants JSN Network, Plaintiff Keefe was also employed by Defendants McHenry Donuts.

40. On August 18, 2022, Defendant JSN Network sent an offer letter to Plaintiff Castelli with the following JSN Network logo on the top of the page:

41. Plaintiff Castelli electronically signed the offer letter on August 18, 2022, and returned it to Defendant JSN Network

42. Plaintiff Castelli was offered a position with Defendant JSN Network.

43. Other similarly situated employees, including Plaintiff Keefe, were offered positions with Defendant JSN Network and worked at one the stores in the Network.

44. Plaintiffs were required to attend training to learn Defendant JSN Network's systems.

45. Plaintiff Castelli's offer letter stated that she would be a member of JSN Network's dynamic and fast-growing team.

46. Plaintiff Castelli's offer letter stated that she would be supervised by JSN Network's District Manager, Defendant Naimesh Upadhyaya.

47. Plaintiff Castelli's offer letter stated that Mr. Upadhyaya would work with her to complete her Dunkin Manager Training in McHenry IL.

48. Plaintiff Castelli's offer letter detailed her compensation to be $60,000 per year including a 6-day work week with 55 hours per week.

49. Plaintiff Castelli was offered a position as a salaried employee.

50. Plaintiff Castelli's offer letter detailed a bonus to Restaurant Managers up to $15,000 per year.

51. Plaintiff Castelli's offer letter stated that she would be eligible for a bonus in Q4 2022 in her role as Restaurant Manager pending that she is 100% certified with Online U Manager training.

52. Plaintiff Castelli's offer letter stated that her start date would be September 19, 2022.

53. Plaintiff Castelli's offer letter stated, "We look forward to your joining us at JSN Network."

54. Plaintiff Castelli's offer letter was signed "Sincerely, JSN Network."

55. On September 19, 2022, Plaintiff Castelli signed an employment contract with this heading:

JSN
NETWORK

56. In the contract, the Plaintiff Castelli's employer was identified as McHenry Donuts, Inc. or to be determined based on any chosen location of JSN Network, Inc's locations.

57. Plaintiff Castelli's employment contract referred to McHenry Donuts, Inc. as a location of Dunkin Donuts & Baskin Robbins.

58. Plaintiff Castelli's employment contract stated that McHenry Donuts, Inc. is engaged in the business of d/b/a Dunkin Donuts & Baskin Robbins selling coffee and bakery goods.

59. Plaintiff Castelli's employment contract stated that McHenry Donuts, Inc. is also engaged in developing and operating Dunkin Donuts & Baskin Robbins locations in northwest Chicagoland area.

60. Plaintiff Castelli's employment contract required her to work a minimum of 50 hours per week and 6 days per week including weekends and until the daily/weekly tasks are completed on a regular basis.

61. Plaintiff Castelli's employment contract stated that McHenry Donuts, Inc. employed her as a Store Manager.

62. Plaintiff Castelli's employment contract stated that she agreed to be subject to the general supervision, advice and direction of McHenry Donuts, Inc. and McHenry Donuts, Inc.'s supervisory personnel of upper management.

63. Plaintiff Castelli's employment contract stated that her compensation would be an annual salary of $60,000 equal to a bi-weekly salary of $2,307.69.

64. Plaintiff Castelli's employment contract's final page included a top line of "McHenry Donuts Inc. (or TBD any chosen location of JSN Network Inc locations)."

65. Plaintiff Castelli worked as a restaurant manager at McHenry Donuts, Inc. at 4502 Elm Street, McHenry, Illinois 60050.

66. The location of Plaintiff Castelli's management responsibilities could be changed by Defendants listed at ¶¶ 4-16 at any time.

67. Defendants listed at ¶¶ 4-16 required Plaintiff Castelli and other store employees to work at multiple locations in the Network.

68. On multiple occasions from September 2022 through March 2024, JSN's District Managers instructed Plaintiff Castelli to work at the Dunkin' locations: Defendants Johnsburg Coffee, Algonquin Coffee, Antioch Orchard Coffee, Inc., Nilesh, Inc., McHenry Rt. 31 Coffee, Inc., and J & SP Food, Inc.

69. When Plaintiff Castelli worked at other locations, Plaintiff Castelli was required to clock in and clock out at the McHenry Donuts location.

70. When Plaintiff Castelli worked at other locations, she was paid by Defendant McHenry Donuts.

71. While working at the stores of Defendants Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Nilesh, Inc., J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc., each individual Defendant store operated as Plaintiff Castelli's employer, because they had the authority to hire or fire Plaintiff Castelli to work at their location, set the conditions of her employment while Plaintiff Castelli worked at their store, supervised Plaintiff Castelli while she worked at their store, and controlled her employment records for her time working at their store.

72. In February 2024, JSN Network sent an offer letter to Plaintiff Keefe.

73. The offer letter from JSN Network stated, "We are pleased to offer you a position with JSN Network, as a Restaurant Manager in Training at JSN Network."

74. Plaintiff Keefe was assigned to the Lake Zurich Training Store under manager Ashir Aziz.

75. Plaintiff Keefe's base compensation was $57,000 annually with no insurance plan and included a 6-day work week of 55 hours per week.

76. Plaintiff Keefe was offered a bonus as a Restaurant Manager of up to $15,000 per year.

77. Plaintiff Keefe was assigned to work as a Restaurant Manager at McHenry Donuts.

78. Plaintiff Keefe signed a contract with JSN Network and McHenry Donuts for her work as a Restaurant Manager at McHenry Donuts.

79. During Plaintiff Keefe's employment, she regularly worked over 40 hours and was not paid overtime.

80. During her employment, Plaintiff Keefe had weeks when her salary was cut if she did not work the required 55 hours.

81. Plaintiff Keefe earned vacation time, but she was denied payment when she used the vacation days.

82. During their employment with Defendants listed in ¶¶ 5-12, Plaintiffs attended quarterly meetings at 1180 Heather Drive.

83. The quarterly meetings were attended by the district managers and owners of various stores in the JSN Network, including Defendants listed in ¶¶ 5-12.

84. In each quarterly meeting, between 4-8 stores attended. The 4-8 stores often had the same JSN Network district manager.

85. In the quarterly meetings, multiple topics were discussed including brand expectations, new products, performance of each store, bonuses, etc.

86. During the quarterly meetings, individual bonuses were discussed with Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, Curt Pedro, Naimesh Upadhyaya and Shona Bonney.

87. Upon information and belief, Defendants listed in ¶¶ 4-16 determined that employees were to be paid from their home store regardless of the location where he/she worked.

88. The home store would then list this pay as "labor" cost.

89. A home store's "labor" cost was one variable in determining whether the store manager received a bonus.

90. Plaintiff Castelli was routinely denied bonuses based on her home store's "labor" costs, costs of food products, and "Paid Outs."

91. On or about December 2023, Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro denied Plaintiff Castelli her full, earned bonus for Q3 in 2023.

92. During other quarters in 2022, 2023 and 2024, Plaintiff Castelli and other similarly situated restaurant managers were denied earned bonuses due to "labor" costs, costs of food products, and "Paid Outs."

93. Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, and Curt Pedro instructed Plaintiff Castelli to include "labor" costs, costs of products for the home store, and employee travel costs as part of the store's "Paid Outs."

94. Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro decided what Plaintiff Castelli and similarly situated Store Manages could include in food and labor and "Paid Outs."

95. Plaintiffs are covered under the protections of the FLSA because they are employed in an enterprise engaged in commerce or in the production of goods for commerce.

96. Plaintiff Castelli is also covered under the protections of the FLSA because she was employed by Defendants JSN Network, McHenry Donuts, Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Nilesh, Inc., J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc, each of whom were engaged in commerce or the production of goods for commerce.

97. Plaintiff Keefe is also covered under the protections of the FLSA because she was employed by Defendants JSN Network and McHenry Donuts.

98. From 2022-2024, Defendant Jayantilal Patel acted directly in the interest of employer Defendants JSN Network, McHenry Donuts, Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Nilesh, Inc., J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc, because he (1) hired and fired Plaintiffs and employees of these Dunkin' locations; (2) supervised and controlled work schedules and employment conditions of Plaintiffs and employees at these Dunkin' locations; (3) determined the rate and method of pay of Plaintiffs and employees at these Dunkin' locations; and/or (4) maintained employment records for these Dunkin' locations at 1180 Heather Drive and TalentReef.

99. From 2022-2024, Defendants Jayantilal Patel, Nilesh Patel, and Suresh Patel decided and offered the salary of both Plaintiffs and other similarly situated employees.

100. From 2022-2024, Defendant Suresh Patel acted directly in the interest of employer Defendants JSN Network, McHenry Donuts, Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Nilesh, Inc., J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc, because he (1) hired and fired Plaintiffs and employees of these Dunkin' locations; (2) supervised

and controlled work schedules and employment conditions of Plaintiff Castelli and employees at these Dunkin' locations; (3) determined the rate and method of pay of Plaintiff Castelli and employees at these Dunkin' locations; and/or (4) maintained employment records for these Dunkin' locations at 1180 Heather Drive and TalentReef.

101. From 2022-2024, Defendant Nilesh Patel acted directly in the interest of employer Defendants JSN Network, McHenry Donuts, Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Nilesh, Inc., J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc, because he (1) hired and fired Plaintiffs and employees of these Dunkin' locations; (2) supervised and controlled work schedules and employment conditions of Plaintiffs and employees at these Dunkin' locations; (3) determined the rate and method of pay of Plaintiffs and employees at these Dunkin' locations; and/or (4) maintained employment records for these Dunkin' locations at 1180 Heather Drive and TalentReef.

102. From 2022-2024, Defendant Alka Patel, the sole owner of JSN Network, acted directly in the interest of employer Defendant JSN Network, because she (1) had the power to hire and fire Plaintiffs and employees of JSN Networks' Dunkin' locations; (2) supervised and controlled work schedules and employment conditions of Plaintiffs and employees at JSN Networks' Dunkin' locations; (3) determined the rate and method of pay of Plaintiffs and employees at JSN Network's Dunkin' locations; and/or (4) maintained employment records for JSN Network's Dunkin' locations at 1180 Heather Drive and TalentReef.

103. From 2022-2024, Defendant Curt Pedro acted directly in the interest of employer Defendants JSN Network, McHenry Donuts, Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Nilesh, Inc., J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc, because he (1) had the power to hire and fire Plaintiffs and employees of these Dunkin' locations;

(2) supervised and controlled work schedules and employment conditions of Plaintiffs and employees at these Dunkin' locations; (3) determined the rate and method of pay of Plaintiff Castelli and employees at these Dunkin' locations; and/or (4) maintained employment records for these Dunkin' locations at 1180 Heather Drive and TalentReef.

104. From 2022-2024, Defendant Curt Pedro was directly responsible for the day-to-day operations of Plaintiffs and other employees at Defendants JSN Network, McHenry Donuts, Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Nilesh, Inc., J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc, including handling managerial and administrative tasks.

105. JSN Network and the other Defendants have divided up their companies into individual companies to avoid liability under the FLSA and other federal laws.

106. The corporate Defendants, ¶¶ 5-12, are separate establishments that constitute one enterprise and/or joint employers.

107. Plaintiff was employed by JSN Network, Inc. and McHenry Donuts, Inc. from her initial employment through her firing.

108. In addition, upon information and belief, Plaintiff Castelli was also employed by Defendants Johnsburg Coffee LLC, Algonquin Coffee, Inc., Antioch Orchard St. Coffee, Inc., Nilesh, Inc., J & SP Food, Inc., and McHenry Rt. 31 Coffee, Inc. while working for their stores during her employment with Defendants JSN Network, Inc. and McHenry Donuts, Inc.

109. Defendants listed in ¶¶ 5-12 and businesses in the Network (¶ 19) are for-profit companies.

110. Defendants listed in ¶¶ 5-12 and businesses in the Network (¶ 19) are two or more businesses that involve (1) related activities performed through (2) unified operation and/or (3) common control for a (4) common business purpose.

111. Defendants listed in ¶¶ 5-12 and businesses in the Network (¶ 19) perform related activities, namely operating retail stores selling Dunkin' including but not limited to warehousing, bookkeeping, auditing, purchasing, advertising, and the retailing of Dunkin' products.

112. Defendants, including the corporations and individuals listed in ¶¶ 5-17, maintain and exercise common control over the employees, including but not limited to hiring and firing of employees, setting the terms of employment, and dictating the day-to-day operations of the locations.

113. The corporate Defendants, ¶¶ 5-12, have common human resources and other common staff managing and controlling the operations of the 50+ stores in the JSN Network, including those listed in ¶ 19.

114. Upon information and belief, employees of Defendants listed in ¶¶ 6-12 and ¶ 19 are all subject to the same employment policies.

115. Defendant JSN Network determines and carries out the employment policies for employees at the 50+ stores in the JSN Network, including those listed in ¶ 19.

116. Upon information and belief, Defendants, including the corporations and individuals, ¶¶ 5-17, exercised supervisory authority over Plaintiffs and other similarly situated employees.

117. Upon information and belief, Defendants, including the corporations and individuals, ¶¶ 5-17, were responsible for the alleged FLSA violations while acting in the interests of JSN Network and the other named Defendants.

118. Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro have the power to direct, regulate, govern, or administer the performance of employees of Defendants listed in ¶¶ 5-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19.

119. Upon information and belief, Defendants listed in ¶¶ 5-12 and businesses in the Network (¶ 19) are controlled by Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro.

120. The gross volume of sales of each of the Defendants listed in ¶¶ 5-12 and businesses in the Network (¶ 19) in the 12-month periods in 2022, 2023, and 2024 exceed $500,000.

121. Under information and belief, the gross volume of sales of Defendants listed in ¶¶ 5-12 and businesses in the Network (¶ 19) in 2025 will exceed $500,000.

122. Under information and belief, the gross volume of sales of JSN Network in 2025 will exceed $500,000.

123. Upon information and belief, the 12-month gross volume of sales for McHenry Donuts in each year of 2022-2025 exceed $500,000.

124. Defendant JSN Network advertises employment opportunities on its website for Defendants listed in ¶¶ 6-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19.

125. Defendant JSN Network's website invites prospective employees to apply for jobs at any location for Defendants listed in ¶¶ 6-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19.

126. Defendants JSN Network, Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro required employees of Defendants (listed in ¶¶ 6-12) and the 50+ stores in the JSN Network, including those listed in ¶ 19, to work shifts at other locations in the network.

127. Defendant JSN Network and its owners and employees, including Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro, supervised and/or controlled the conditions of payment, including paychecks, taxes, benefits, etc. of Defendants' (listed in ¶¶ 6-12) and the 50+ stores in the JSN Network, (including those listed in ¶ 19).

128. Defendant JSN Network and its owners and employees, including Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro, supervised and/or controlled the salary and/or hourly rate of pay of employees of Defendants listed in ¶¶ 6-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19.

129. Defendant JSN Network and its owners and employees, including Defendants Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro, exercised significant control and decionmaking over employees of JSN Network, Defendants listed in ¶¶ 6-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19, including Plaintiff.

130. Defendants listed in ¶¶ 5-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19, share office space, registered agents, registered agent addresses, directors, and/or owners.

131. Defendants listed in ¶¶ 5-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19, share common employment policies, including bonuses, paid time off, health benefits, dental benefits, and other unnamed benefits.

132. Upon information and belief, employment records for Defendants listed in ¶¶ 5-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19, are kept at the same location: 1180 Heather Drive, Lake Zurich, IL 60047 or another location directed by Defendant JSN Network.

133. Store managers for Defendants listed in ¶¶ 5-12 and the 50+ Dunkin' stores in the JSN Network, including those listed in ¶ 19 could not hire or fire employees without the consent of Defendants JSN Network, Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro.

134. Defendants listed in ¶¶ 5-19 set the same rate of pay for a category of employees (i.e. crew member, shift leader, assistant manager, restaurant manager) that worked at the locations of other named Defendants.

135. Defendants listed in ¶¶ 5-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19, shared products between their locations.

136. Defendants listed in ¶¶ 5-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19, did not track products that were exchanged between Defendants' locations.

137. Products for stores, including Defendants listed in ¶¶ 6-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19, were often delivered to a single store.

138. Jayantilal Patel's name appeared on invoices for products ordered by stores in the Network.

139. Defendants JSN Network, McHenry Donuts, Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro exercised control over the working conditions of Plaintiffs.

140. Defendants JSN Network, McHenry Donuts, Jayantilal Patel, Suresh Patel, Nilesh Patel, Alka Patel, and Curt Pedro acted directly or indirectly in the interest of an employer in relation to Plaintiffs and other employees.

141. Defendants Jayantilal Patel and Alka Patel, as owners and directors of JSN Network, exercised control over the terms of employment and working conditions of Plaintiffs including the following: (1) the power to hire and fire; (2) supervised and controlled work

schedules and employment conditions; (3) determined the rate and method of pay; and (4) maintained employment records.

142. Defendants Suresh Patel and Nilesh Patel, as owners of McHenry Donuts, exercised control over the terms of employment and working conditions of Plaintiffs including the following: (1) the power to hire and fire; (2) supervised and controlled work schedules and employment conditions; (3) determined the rate and method of pay; and (4) maintained employment records.

143. Defendant Curt Pedro, as a Director of Operations of Defendant JSN Network, exercised control over the terms of Plaintiffs' employment and the working conditions during their employment including holding power to hire and fire Plaintiff, supervising and controlling her work schedule and/or employment conditions, determining the rate and method of payment, and maintaining employment records.

144. Plaintiff Castelli has an employer/employee relationship with Defendants listed in ¶¶ 5-19.

145. Defendants listed in ¶¶ 5-19 had the authority to hire and fire employees, to promulgate work rules and assignments and set conditions of employment, including compensation, benefits, and hours of its employees, performed day-to-day supervision, including employee discipline of its employees, controlled employee records, including payroll, insurance, and taxes of its employees, and exercised significant control over its employees, including Plaintiff Castelli.

146. Plaintiff Keefe has an employer/employee relationship with Defendants JSN Network and McHenry Donuts.

147. Defendants JSN Network and McHenry Donuts had the authority to hire and fire employees, to promulgate work rules and assignments and set conditions of employment,

including compensation, benefits, and hours of its employees, performed day-to-day supervision, including employee discipline of its employees, controlled employee records, including payroll, insurance, and taxes of its employees, and exercised significant control over its employees, including Plaintiff Keefe.

148. At all times relevant, including in 2022, 2023, and 2024, JSN Network and the 50 restaurants all constituted a single enterprise because interpretation of operations, shared common management, centralized control of labor relations, and common ownership and financial control.

149. At all times relevant in 2022, 2023, and 2024 this said single enterprise had a written and oral policy that any salaried employee that did not work at least 50 hours in a given week would not be paid their salary. This policy and the enforcement of it under FLSA violated the salary basis test and renders all employees that defendants categorized as exempt under FLSA as non-exempt.

150. Defendants in ¶¶ 5-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19 violated the overtimes provisions of the FLSA when they required employees to work more than 40 hours in a week without paying the required overtime pay of 1.5 times the hourly rate.

151. For purposes of this complaint, JSN and the 50 restaurants it managed are joint employers of Castelli and Keefe as well as the approximately 500 employees at the 50 JSN restaurants. Additionally, for purposes of this complaint, JSN and the 50 restaurants it managed are a single integrated enterprise under FLSA liability.

**§ 541.600 Amount of salary required**.

> **(a)** To qualify as an exempt executive, administrative or professional employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis at a rate of not less than $684 per week.

**§ 541.700 Primary duty.**

**(a)** To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

**(b)** The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

**(c)** Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

**§ 541.602 Salary basis.**

(a) General rule. An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

(1) Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work <u>without regard to the number of days or hours worked.</u> Exempt employees need not be paid for any workweek in which they perform no work.

(2) An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is (1) ready, willing and able to work, deductions may not be made for time when work is not available.

(b) Exceptions. The prohibition against deductions from pay in the salary basis requirement is subject to the following exceptions:

(1) Deductions from pay may be made when an exempt employee is absent from work for on; or more full days for personal reasons, other than sickness or disability. Thus, if an employee is absent for two

**§ 541.603 Effect of improper deductions from salary**

(a) An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis. The factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.

(b) If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions. Employees in different job classifications or who work for different managers do not lose their status as exempt employees. Thus, for example, if a manager at a company facility routinely docks the pay of engineers at that facility for partial-day personal absences, then all engineers at that facility whose pay could have been improperly docked by the manager would lose the exemption; engineers at other facilities or working for other managers, however, would remain exempt.

(c) Improper deductions that are either isolated or inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions.

(d) If an employer has a clearly communicated policy that prohibits the improper pay deductions specified in § 541.602(a) and includes a complaint mechanism, reimburses employees for any improper deductions and makes a good faith commitment to comply in the future, such employer will not lose the exemption for any employees unless the employer willfully violates the policy by continuing to make improper deductions after receiving employee complaints. If an employer fails to reimburse employees for any improper deductions or continues to make improper deductions after receiving employee complaints, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions. The best evidence of a clearly communicated policy is a written policy that was distributed to employees prior to the improper pay deductions by, for example, providing a copy of the policy to employees at

the time of hire, publishing the policy in an employee handbook or publishing the policy on the employer's Intranet.

**§ 541.100 General rule for executive employees**.

(a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary basis at not less than the level set forth in § 541.600;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

152. The FLSA is a remedial statute designed to abolish substandard labor conditions, including protecting workers from substandard wages and oppressive hours. 29 U.S.C. § 202(a); A.H. *Phillips, Inc. v. Walling* 324 U.S. 490, 493, 65 S. Ct. 807, 89 L. Ed. 1095 (1945); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07, 65 S. Ct. 895, 89 L. Ed. 1296 (1945); *Parker v. Nutrisystem, Inc.*, 620 F.3d 274, 279 (3d Cir. 2010). The remedial, humanitarian purpose of the FLSA requires its provisions to be interpreted and applied liberally. *Brock v. Richardson*, 812 F.2d 121, 123-24 (3d Cir. 1987).

153. To meet the **salary-basis** test, a defendant bears the burden to establish that it paid its employees: "(1) a predetermined amount, which (2) was not subject to deductions (3) based on quality or quantity of work performed." *Kaiser v. At The Beach, Inc.* No. 08-cv-586-TCK-FHM. 2011 U.S. Dist. Lexis. 149857. 2011 WL 6826577, at *14 (N.D. Okla. Dec. 28. 2011) (citing *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618. 625-26 (6th Cir. 2009)); see also 29 C.F.R. § 541.602. The Secretary of Labor's regulations provide guidance for determining whether

an employee's salary is subject to reduction and, hence, fails the **salary-basis** test. See 29 C.F.R. § 541.603 (quoted *infra* at p. 24).

154. The Secretary of Labor has issued regulations establishing five non-exclusive factors courts should consider when determining the existence of an actual practice of improper salary deductions:

> The factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.

155. 29 C.F.R. § 541.603(a). Under this subsection, "if the facts demonstrate that the employer maintained '[a]n actual practice of making improper deductions,' the default conclusion is that the employer '*shall* lose the exemption' because its 'actual practice' of improperly deducting pay vitiates the intent to pay a salary under the **salary-basis** test." *Ellis*, 779 F.3d at 1189 (quoting 29 C.F.R. § 541.603(a) (emphasis added). "Consequently, when the facts so indicate, 'the exemption is lost during the time period in which the improper deductions were made.'" Id. (quoting 29 C.F.R. § 541.603(b). "If an employer docks an employee's pay for partial day absences, violations of rules other than those of safety, or based on the quantity or quality of the employee's work, the employee is not considered to be on a salary basis." *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 534 (7th Cir. 1999), overruled on other grounds, *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013); see also *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 370 (7th Cir. 2005). Even if the employee's salary is not actually reduced, she may nevertheless lose exempt status if an employment policy creates a "significant likelihood" of such deductions.

*Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997). Under FLSA double damages are the norm. *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1989).

156. In a case like this where an alleged "salaried" employee's schedule with Defendants required them to work more than 40 hours in a week, this was a violation of the overtime provisions of the FLSA. See *Brock*, 846 F.2d at 186-87 (finding that casinos supervisors are compensated on an hourly and not a salary basis when they received a "weekly salary guarantee" of $250 for any week they worked, but then were paid hourly once they reached the number of hours necessary to meet this threshold, and had absences deducted at an hourly rate; therefore, these supervisors were not exempt from the FLSA overtime requirements.) *Su v. Bene Mkt. LLC*, 2024 U.S. Dist. Lexis. 47967.

157. Defendants either knew or showed a reckless disregard as to whether its conduct was prohibited by FLSA. The FLSA requires employers to maintain records of hours worked each workday and total hours worked each workweek. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2(a)(7); 516.6(a)(1). FLSA § 11(c) requires employers to "make, keep, and preserve such records of the persons employed by him and the wages, hours, and other conditions of employment maintained by him," as prescribed by regulation of the DOL. 29 U.S.C. § 211(c). The United States Supreme Court recognized the importance of accurate recordkeeping in the FLSA enforcement scheme and held that an employer's failure to maintain accurate records of hours actually worked or kept records that are inaccurate or inadequate shifts the burden of proof concerning back wage liability to the employer. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1515 (1945); see also *Wirtz v. Turner*, 330 F.2d 11 (7th Cir. 1964); *U.S. Dept of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 780-81 (6th Cir. 1995).

**COUNT I**
**FAIR LABOR STANDARDS ACT**
**29 U.S.C. 201 et seq.**
***Castelli v. JSN Network, et. al.***

158. Plaintiffs incorporates the allegations of Paragraphs 1 through 157 of this Complaint as if fully restated in this paragraph.

159. Defendants listed in ¶¶ 5-19 willfully violated the FLSA.

160. Defendants listed in ¶¶ 5-19 have divided up their companies into individual companies to avoid liability under the FLSA and other federal laws.

161. Defendants listed in ¶¶ 5-19 and the 50+ stores in the JSN Network, including those listed in ¶ 19, constitute an enterprise and/or a joint employer under the FLSA.

162. In her position as Store Manager, Defendants listed in ¶¶ 5-19 classified Plaintiff Castelli and Plaintiff Keefe as exempt employees.

163. Plaintiff Castelli's contract stated that she would receive the predetermined amount of $60,000 equal to a bi-weekly salary of $2,307.69 payable every other week.

164. Plaintiff Keefe's contract stated that she would be paid a salary of $57,000.

165. As an exempt employee, Plaintiffs must receive full salary for any week they performed any work.

166. On multiple occasions in 2022, 2023, and 2024, one or more of the Defendants listed in ¶¶ 5-19 made deductions from Plaintiff Castelli's predetermined salary.

167. On multiple occasions in 2024, one or more of the Defendants JSN Network and McHenry Donuts made deductions from Plaintiff Keefe's predetermined salary.

168. On numerous weeks when Plaintiff Castelli worked less than her weekly requirement, Defendants listed in ¶¶ 5-19 paid Plaintiff Castelli on an hourly basis rather than her bi-weekly salary of $2,307.69. These include, but are not limited to, the following:

a. From April 30, 2023, to May 13, 2023, Plaintiff Castelli was paid $1,346.15 for two weeks of work.

b. From May 14, 2023, to May 27, 2023, Plaintiff Castelli was paid $480.77. Plaintiff worked approximately 6 hours in the first week and 17 hours in the second week of the pay period.

c. From May 28, 2023, to June 10, 2023, Plaintiff Castelli was paid $961.54. Plaintiff worked approximately 27 hours in the first week and 19 hours in the second week of the pay period.

d. From June 11, 2023, to June 24, 2023, Plaintiff Castelli was paid $1,057.69. Plaintiff worked approximately 23 hours in the first week and 26 hours in the second week of the pay period.

e. From June 25, 2023, to July 8, 2023, Plaintiff Castelli was paid $1,153.85. Plaintiff worked approximately 22 hours in the first week and 33 hours in the second week of the pay period.

f. From July 9, 2023, to July 22, 2023, Plaintiff Castelli was paid $1,057.69. Plaintiff worked approximately 24 hours in the first week and 28 hours in the second week of the pay period.

g. From March 17, 2024, to March 30, 2024, Plaintiff Castelli was paid $769.23 for two weeks of work. Her manager's salary for time that she worked during the first week was $192.31.

169. On several weeks when Plaintiff Keefe worked less than her weekly requirement, Defendants listed in ¶¶ 5-19 paid Plaintiff Keefe on an hourly basis rather than her bi-weekly salary.

170. Defendants listed in ¶¶ 5-17 made the decision willfully to violate the FLSA and pay Plaintiffs hourly on weeks when as an exempt employee, she was entitled to her weekly salary.

171. Defendants listed in ¶¶ 5-17 knew or acted with reckless disregard for whether its conduct of paying a salaried/exempt employee on an hourly basis violated the FLSA.

172. Defendants listed in ¶¶ 5-17 failed to make an adequate inquiry into whether its conduct of paying salaried/exempt employees on an hourly basis complied with the FLSA.

173. The deductions made by one or more Defendants listed in ¶¶ 5-17 from Plaintiffs' predetermined salary violated the salary basis requirement of an exempt employee under the FLSA.

174. Defendants listed in ¶¶ 5-17 had an actual practice of making improper deductions from Plaintiff and other employees' predetermined salaries.

175. Because of Defendants' listed in ¶¶ 5-17 actual practice of making improper deductions from Plaintiff's and other employees' salaries, Defendants lose the salary basis exemption.

176. Without the exemption, Plaintiffs and other managerial employees are non-exempt employees.

177. Plaintiffs were entitled to 1.5 times her hourly pay rate for each hour that they worked over 40 hours in any given week.

178. Plaintiffs were systematically denied pay for overtime for all weeks when they worked over 40 hours.

179. In 2022, 2023, and 2024, Plaintiff Castelli frequently worked more than 40 hours per week. These include, but are not limited to, the following;

a. For the week of October 30, 2022, to November 4, 2022, Plaintiff worked approximately 46 hours.

b. For the week of November 5, 2022 to November 12, 2022, Plaintiff worked approximately 59 hours.

c. For the week of March 19, 2023, to March 26, 2023, Plaintiff worked approximately 62 hours.

d. For the week of March 27, 2023, to April 1, 2023, Plaintiff worked approximately 49 hours.

e. For the week of January 7, 2024, to January 13, 2024, Plaintiff worked approximately 48 hours.

f. For the week of January 14, 2024, to January 20, 2024, Plaintiff worked approximately 60 hours.

180. Between March and August 2024, Plaintiff Keefe frequently worked more than 40 hours per week.

181. During her employment, Plaintiff Castelli received bonuses in December 2022 ($100), February 2023 ($500), May 2023 ($500), June 2023 ($1,050), August 2023 ($1,200), and December 2023 ($100).

182. Under the FLSA, these bonuses should have been figured into her regular rate of pay, so that when she worked overtime, the time-and-a-half premium would have been based on a regular rate that included the bonuses.

183. However, according to Defendant's production, there is ambiguity as to the exact number of bonuses Plaintiff Castelli received and how to figure those bonuses into her regular rate of pay. Defendants' production is inconsistent regarding bonuses mainly because Plaintiff

Castelli's pay stubs show bonuses that do not appear on Defendants' official Quarterly Review Bonuses spreadsheet.

184. Defendants listed in ¶¶ 5-17 failed to include bonuses in Plaintiff's regular rate of pay.

185. As a result, Plaintiffs and other nonexempt employees were systematically underpaid for their overtime hours.

186. Defendants listed in ¶¶ 5-17 knew their practices of making improper deductions from Plaintiffs' and other employees' salaries violated the FLSA or were indifferent to whether they were violating the FLSA.

187. Defendants listed in ¶¶ 5-17 willfully and intentionally failed to pay Plaintiffs' and other employees' overtime when they worked more than 40 hours in a given week.

**<u>Prayer for Relief as to Count I</u>**

i. That Plaintiffs and other employees similarly situated be awarded all unpaid wages and bonuses lost as a result of Defendants' wrongful conduct in an amount exceeding $75,000.00 to be determined at trial;

ii. That Plaintiffs and other employees similarly situated be awarded liquidated damages;

iii. That Plaintiffs and other employees similarly situated be awarded interest on the amount awarded at trial at the prevailing rate;

iv. That Plaintiffs and other employees similarly situated be awarded attorneys' fees and costs;

v. Award Plaintiffs and all other employees all remedies available under the FLSA;

vi. Grant such other relief as may be just and proper.

## COLLECTIVE ACTION ALLEGATIONS

188. Plaintiffs incorporate the allegations of Paragraphs 1 through 187 of this Complaint as if fully restated in this paragraph.

189. Upon information and belief, Defendants listed in ¶¶ 5-12 and the 50+ stores in the JSN Network, including those listed in ¶ 19, have over 1,000 employees.

190. Defendants listed in ¶¶ 5-17 and the 50+ stores in the JSN Network, including those listed in ¶ 19, have divided up their companies into individual companies to avoid liability under the FLSA and other federal laws.

191. Defendants listed in ¶¶ 5-17 and the 50+ stores in the JSN Network, including those listed in ¶ 19, constitute an enterprise and/or a joint employer under the FLSA.

192. In 2022, 2023, and 2024, Defendants listed in ¶¶ 5-12 each had an annual dollar volume of sales over $500,000 during the 12-month period in each calendar year.

193. From 2022 to 2025, Defendants listed in ¶¶ 5-17 have employed hundreds of exempt employees who would be reclassified as non-exempt employees.

194. Deductions made by one or more Defendants listed in ¶¶ 5-17 from employees' predetermined salary violated the salary basis requirement of an exempt employee under the FLSA.

195. Because of Defendants listed in ¶¶ 5-17 actual practice of making improper deductions from employees' salaries, Defendants lose the salary basis exemption.

196. Without the exemption, numerous employees of Defendants listed in ¶¶ 5-17 are non-exempt employees.

197. A significant number of these reclassified non-exempt employees worked overtime and earned bonuses.

198. A significant number of these reclassified non-exempt employees did not receive 1.5 times their hourly rate for any hours worked over 40 during a 7-day period.

199. Defendants listed in ¶¶ 5-17 systematically refused to pay overtime to employees working over 40 hours during a one-week period.

200. Defendants listed in ¶¶ 5-17 failed to include bonuses in employees' regular rate of pay.

201. As a result, nonexempt employees were systematically underpaid for their overtime hours.

202. The Defendants listed in ¶¶ 5-17 engaged in a willful, uniform practice of failing to pay overtime to non-exempt employees.

203. The Defendants listed in ¶¶ 5-17 engaged in a willful, uniform practice of failing to pay predetermined salary to exempt employees.

204. The Defendants listed in ¶¶ 5-17 engaged in a willful, uniform practice of failing to figure bonus pay into the regular rate of pay for non-exempt employees.

205. As a result, the putative class at issue is so numerous that joinder of all members is impracticable.

206. As a result, there are questions of law or fact common to the putative classes.

207. Plaintiffs' claims are typical of the claims of the putative classes and/or collective.

208. Plaintiffs will fairly and adequately protect the interest of the class.

209. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action and/or collective action is

superior to other available methods for the fair and efficient adjudication of this controversy. Fed. Rule Civ. Pro. 23(b)(3).

210. Collective action treatment is otherwise appropriate.

WHEREFORE, the Plaintiffs, on behalf of themselves and all other similarly situated employees, respectfully requests judgment in favor of Plaintiffs and against Defendants, and award statutory and other damages, costs, attorney's fees, and all other relief that this Honorable Court deems just and proper.

Dated: June 10, 2026

SINSON LAW GROUP

/s/ Kent D. Sinson
Kent D. Sinson, Attorney for Plaintiff

Kent D. Sinson (Attorney No. 6196953)
kent@sinsonlawgroup.com
SINSON LAW GROUP
100 N. LaSalle Street, Suite 1100
Chicago, Illinois 60602
(312) 332-2107 / Phone
(312) 332-4508 / Fax

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRIANNA CASTELLI and TAYLOR KEEFE, Individually and as Class Representative.<br><br>Plaintiffs,<br><br>v.<br><br>JSN NETWORK, INC., MCHENRY DONUTS, INC., JOHNSBURG COFFEE LLC, ALGONQUIN COFFEE, INC., ANTIOCH ORCHARD ST. COFFEE, INC., NILESH, INC., J & SP FOOD, INC., MCHENRY RT. 31 COFFEE, INC., JAYANTILAL PATEL, SURESH PATEL, NILESH PATEL, ALKA PATEL, and CURT PEDRO.<br><br>Defendants. | Case No. 25-cv-13208<br><br>**JURY DEMAND**<br><br>Judge Jeffery I. Cummings, District Judge. |

**JURY DEMAND**

In accordance with Rule 5(d), the undersigned demands a jury trial.

Dated: June 10, 2026

SINSON LAW GROUP

/s/ Kent D. Sinson
Kent D. Sinson, Attorney for Plaintiff

Kent D. Sinson (Attorney No. 6196953)
kent@sinsonlawgroup.com
SINSON LAW GROUP
100 N. LaSalle Street, Suite 1100
Chicago, Illinois 60602
(312) 332-2107 / Phone
(312) 332-4508 / Fax

## CERTIFICATE OF SERVICE

I, Yuriy Tymovfi, a non-attorney, certify that on June 10, 2026, I electronically filed the foregoing document **Plaintiff's Second Amended Complaint** with the Clerk of the Court by using the CM/ECF system in the Northern District of Illinois, which will send a notice of filing to all attorneys on record. *See Attorneys to be notified below.*

**Attorney for Defendants**
Stephanie M. Dinkel
KOEHLER DINKEL LLC
900 S. Frontage Road, Ste 300
Woodridge, IL 60517

Email: sdinkel@kdllclaw.com
Email: sgomez@kdllclaw.com
Email: svanek@kdllclaw.com

/s/ Yuriy Tymovfi
Yuriy Tymovfi, Legal Assistant

Kent D. Sinson (ARDC 6196953)
kent@sinsonlawgroup.com
SINSON LAW GROUP
100 N. LaSalle Street, Suite 1100
Chicago, Illinois 60602
(312) 332-2107 / Phone
(312) 332-4508 / Facsimile